HERBERT A. RICE, Attorney General, *ex rel.* PHILIPPE R. SYLVESTRE *vs.* BOARD OF ALDERMEN AND BOARD OF CANVASSERS, CITY OF WOONSOCKET.

DECEMBER 30, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)* *"Real Estate"* *Construction of Statutes.*

While the term "real estate" is frequently used to denote lands or physical real property and must be given that interpretation in the construction of constitutional and statutory provisions when required by the context, in its primary and technical meaning it signifies the quantity of interest which a person has in land including all save a mere chattel interest.

*(2)* *"Real Estate."* *Elections.*

In Cons. R. I. Art. II, sec. 1, "Every male citizen . . . who is really and truly possessed in his own right of real estate in such town or city of the value of $134 . . . " the term "real estate" is used in its strict legal sense, meaning an *estate in land* rather than the land itself.

*(3)* *Elections.* *Construction of Statutes.*

In Cons. R. I. Art. II, sec. 1, "Every male citizen . . . who is really and truly possessed in his own right of real estate in such town or city of the value of $134 . . . being an estate in fee-simple, fee tail, for the life of any person, or an estate in reversion or remainder, *which qualifies no other person to vote . . .*", the relative *"which"* limits the phrase "or an estate in reversion or remainder."

*(4)* *Elections.* *Curtesy Initiate.*

One having an estate of curtesy initiate, of more than one hundred and thirty-four dollars in value and being otherwise qualified, was properly placed upon the real estate voting list of a city, although the name of the wife owning the fee was also placed upon the same list.

The meaning of the word "Value" appearing in Cons. R. I. Art. II, sec. 1, when applied to an estate in reversion or remainder is not passed upon.

CERTIORARI.   Writ issued and after hearing quashed.

SWEETLAND, C. J.   The above entitled petition prays for a writ of *certiorari* to be directed to the members of the Board of Aldermen of the city of Woonsocket, sitting as the Board of Canvassers, ordering said respondents as such Board of Canvassers to certify for our inspection the records of said Board relating to its action on October 27, 1920, placing the name of Anthony Belanger upon the real estate voting list of the first ward of said city, and also ordering said respondents sitting as a Board of Aldermen to certify for our inspection the records of said Board of Aldermen relating to its action on November 3, 1920, declaring said Anthony Belanger duly elected to the office of alderman from said first ward at the election held on November 2, 1920.   A writ of *certiorari* has been issued as prayed for and said records of said Boards have been certified to us.

The petition is based upon the claim of the relator that Anthony Belanger was not on November 2, 1920, a qualified elector for the office of alderman from the first ward of said city and hence under the provisions of Section 1, Article IX of the Constitution of Rhode Island was not eligible to that office.   Said section is as follows: "Section 1.   No person shall be eligible to any civil office (except the office of school committee), unless he be a qualified elector for said office."

It is not questioned that the name of Anthony Belanger was placed upon the real estate voting list by said Board of Canvassers and remained thereon upon the day of election, November 2, 1920, and that the said Belanger at that time possessed the necessary qualifications of a qualified elector so far as relates to his citizenship, age and residence.   It was admitted by the parties that on November 2, 1920, the wife of said Anthony Belanger, to wit: Aline C. Belanger, was the owner in fee simple of realty which stood solely in her name, situated on Park street in the city of Woonsocket, of the value of $9,200, over and above all incumbrances thereon; that the deed conveying said realty to said Aline C. Belanger

had been recorded in the land records of Woonsocket for more than ninety days prior to the day of election November 2, 1920; that in said property Anthony Belanger is tenant by the curtesy initiate; that the value of the interest of Anthony Belanger as tenant by the curtesy initiate exceeds the sum of one hundred and thirty-four dollars over and above all incumbrances thereon; that by reason of said tenancy the name of Anthony Belanger had been placed upon the real estate voting list of said first ward for a number of years prior to November 2, 1920, and said Anthony Belanger had exercised the elective franchise thereby; that Anthony Belanger is possessed in his own right of no real estate save his curtesy interest in said property standing in the name of his wife; that no tax upon either real or personal property had been assessed against Anthony Belanger within the year next preceding November 2, 1920; and that the name of said Aline C. Belanger was also placed by said Board of Canvassers upon the real estate voting list of said first ward for the election of November 2, 1920.

Said Board of Canvassers placed the name of Anthony Belanger upon the real estate voting list for said first ward in pursuance of its construction of the provisions of Article II, Section 1 of the Constitution of Rhode Island. The portion of said section pertinent to the question now under consideration is as follows: "Section 1. Every male citizen of the United States, of the age of twenty-one years, who has had his residence and home in this state for one year, and in the town or city in which he may claim a right to vote, six months next preceding the time of voting, and who is really and truly possessed in his own right of real estate in such town or city of the value of one hundred and thirty-four dollars over and above all incumbrances, or which shall rent for seven dollars per annum over and above any rent reserved or the interest of any incumbrances thereon, being an estate in fee-simple, fee tail, for the life of any person, or an estate in reversion or remainder, which qualifies no other person to vote, the conveyance of which estate, if by

deed shall have been recorded at least ninety days, shall thereafter have a right to vote in the election of all civil officers and on all questions in all legal town or ward meetings so long as he continues so qualified."

Upon the official announcement of the ratification of the XIX Amendment to the Constitution of the United States, extending the right of suffrage to women, and prior to the election of November 2, 1920, Chapter 1867 of the Public Laws of Rhode Island, approved April 22, 1920, took effect in accordance with its provisions. Section 1 of said Chapter 1867 of the Public Laws is as follows: "Section 1. Every woman citizen of the United States resident of the state shall have the same right to vote for civil officers and on all questions in all legally organized town, ward or district meetings as is conferred upon and enjoyed by male citizens of the United States by and under the constitution and laws of this state, subject to the same requirements and restrictions in regard to age, time and place of residence, and other qualifications as male citizens are subject to under the provisions of the constitution and laws of the state regulating their right to vote, and every such woman citizen shall be classified as a voter, in accordance with the provisions of chapter 6 of the general laws, entitled 'Of the rights and qualifications of voters,' and shall be subject to all the provisions of said chapter in the same manner as male citizens." In accordance with the provisions of Section 1, Chapter 6, General Laws, 1909, the said Aline C. Belanger, by reason of her possessions in her own right of a fee-simple estate in said realty situated on Park street in Woonsocket, was classified as a voter in the second class named in said section.

Prior to the ratification of the XIX Amendment to the United States Constitution and the going into effect of Chapter 1867 of the Public Laws, Anthony Belanger as tenant by the curtesy initiate in said realty situated on Park street in Woonsocket was undoubtedly a qualified elector under the provisions of Article II, Section 1 of the

Constitution of Rhode Island quoted above, in accordance with the construction of said section  appearing in the Opinion to the Governor, *In Re the Voting Laws*, 12 R. I. 586, which construction has since been followed in practice. It is the contention of the relator that Anthony Belanger lost his right to vote by reason of his curtesy interest in said property as soon as said property qualified his wife to vote by reason of her fee-simple estate therein.   He bases this contention upon the following construction which he gives to certain provisions of Article II, Section 1 of the Rhode Island Constitution.   He claims that in the language "who is really and truly possessed in his own right of real estate" the words "real estate" should be interpreted to mean "real property," *i. e.,* the actual land or physical real property possessed by a citizen as distinguished from his estate or interest in real property.   The relator further claims that in the clause "which qualifies no other person to vote," the relative "which" has for its antecedent the expression "real estate" which he would interpret as meaning "land" or "real property."   He would also adopt a suggestion made in *In re The Liquors of Horgan*, 16 R. I. 542, and give to the word "being" the meaning of "having."   He would paraphrase the provisions of said section, which are essential to this discussion, in the following form, "Every male citizen of the United States  .  .  .  who is really and truly possessed in his own right of real property  .  .  .  having therein an estate in fee-simple, fee tail, for the life of any person, or an estate in reversion or remainder, which real property qualifies no other person to vote  .  .  .  shall thereupon have a right to vote," etc.

The relator claims that his position is supported by language of the court appearing in *In Re The Voting Laws*, 12 R. I. 586, and in *In re The Liquors of Horgan*, 16 R. I. 542.   *In Re The Voting Laws* was an opinion given at the request of the Governor upon the question, "Can a husband, under the State Constitution, article 2, section 1, be entitled to vote by virtue of any right or interest which he

may have as husband in the real estate of his wife, and if so, in what circumstances?" As a part of its opinion upon this question the court held that a tenant by the curtesy initiate was possessed of "a new kind of vested remainder" in the property of his wife, created by statute, and said: "Estates in remainder are enumerated in art. 2, sec. 1, among the estates which will qualify their owner to vote, if no other person is qualified by the same property, and we can see no good reason why a remainder created by statute should not be as efficacious as a remainder created by deed or will." In the parenthetical clause, "if no other person is qualified by the same property," the court undoubtedly considered the antecedent of the relative "which" in the constitutional provision now under consideration to be the phrase "real estate" and interpreted these words to mean the actual physical real property, the land itself. This language of the court, however, related to a point of construction not necessarily involved in the question then before the court. It appears to have been used merely by the way without full consideration of the point and must be regarded as *dictum.* *In re The Liquors of Horgan, supra,* involved the consideration of whether a complainant in a criminal complaint was a legal voter, and the court apparently considered as material and essential circumstances, the facts that said complainant had "an interest in remainder in the real estate of his late father which estate as a whole was of the value of ten thousand dollars and qualified no other person to vote." In neither of these cases was the court considering circumstances which involved the claim of, or a question as to the right of, any person, other than the remainder man, to vote by reason of some interest or estate in the realty as a whole. *In Re The Voting Laws, supra,* involved the nature of the interest or estate of a tenant by the curtesy initiate; and in *In re The Liquors of Horgan, supra,* the court was considering the meaning of the term "value," as used in said constitutional provision, when it was applied to an estate in remainder in real property, the value of which property as a whole was more than one hundred and thirty-four dollars.

(1)    It is quite true that the term "real estate" is frequently used colloquially to denote lands or physical real property. It must also be given that interpretation in the construction of constitutional and statutory provisions when required by the context. In its primary and technical meaning it signifies the quantity of interest which a person has in land, including all save a mere chattel interest. The construction which should be properly given to the language of the constitutional provision in question is by no means free from doubt. The court in *In re The Liquors of Horgan* spoke of this language as "not extremely felicitous." We are of the
(2) opinion that in the section under consideration the term "real estate" is used in its strict legal sense. The constitutional requirement is that as one qualification for becoming a voter, under the provisions of this section, a citizen shall be "really and truly possessed in his own right of" an estate in land. This construction gives effect to the later phrases, "being an estate in fee-simple, fee tail, for the life of any person, or an estate in reversion or remainder," without verbal change or addition. These phrases are clearly in grammatical apposition with the term "real estate," limiting and qualifying it. If the interpretation of the relator should be accepted and the words "real estate" be given the signification of land or physical real property, the later phrases limiting the term "real estate" and enumerating different degrees of interest, which are strictly estates in landed property, become rhetorically obscure if not meaningless.

Some assistance in arriving at the construction properly to be given to the constitutional provision in question is furnished by a consideration of the sources from which that provision was undoubtedly derived. Under the charter of King Charles II the General Assembly was given full power and authority "to choose, nominate, and appoint such and so many other persons as they shall think fit, and shall be willing to accept the same, to be free of the said Company and body politic, and them into the same to admit." Under the early acts of the General Assembly, passed in pursuance

of the Charter authority, one of the requirements of a free-man and a voter was that he should be "of competent estate." By later enactments it was required that he should be a "freeholder of land, tenements or hereditaments," of a prescribed value. By an act of the General Assembly appearing in Schedule September, 1762, page 192, it was provided that "no Person whatsoever shall be admitted to vote or act as a Freeman in any Town-Meeting in this Colony, but such only, who at the time of such their voting and acting, are really and truly possessed in their own proper Right of a Real Estate within this Colony, to the full Value of Forty Pounds Lawful Money, or which shall Rent for Forty Shillings Lawful Money per annum, being an estate in Fee Simple, Fee Tail, or an Estate in Reversion, that qualifies no other Person to be a Freeman, or at least an Estate for such Persons own Life, or the eldest Son of such a Freeholder. And that no Estate of a less Quality, shall entitle any Person to the Freedom of this Colony." This provision again appears in the Digest of 1767, pp. 78–82; and therein it was further provided: "if any Person in this Colony shall attempt to vote for any Officer in any Town-Meeting, and shall be suspected not to be qualified with Respect to the Sufficiency or Value of his Estate, as aforesaid, it shall and may be lawful for any Freeman to inform the Moderator thereof, and to insist that such Vote be not received, except the Person suspected will first declare, on Oath, or solemn Affirmation, to be admin-istered to him by the said Moderator, that he is really and bonâ Fide qualified with sufficient Estate, as is required by this Act." In the Digests of 1798 and 1822, the same provisions appear save that "to the value of Forty Pounds" is changed to "to the full value of one hundred and thirty four dollars" and "forty shillings" is changed to "seven dollars." In the act of February 1836, the same provisions appear save that to the qualifying estates is added that of an estate in remainder. The law appears to have remained in this form until the adoption of the present constitution, in November, 1842. The phrase "a real estate" which

remained in the statutes of the Colony and the State for more than eighty years before the adoption of the constitution appears to us to refer to an estate in land rather than to the land itself.   If the framers of the present constitution had intended to use the term "real estate" in the sense of physical real property and not in accordance with its primary legal meaning, as in the statutory provisions then in force, we think that they would have indicated such intention of change more clearly than by the mere omission of the article "a".

As to the grammatical antecedent of the relative "which" in the clause "which qualifies no other person to vote" there is uncertainty.   In the view that we have taken as to the interpretation which should be given to the term "real estate" it does not affect our determination in this case whether the antecedent of that relative be regarded as the phrase "real estate" or the word "estate" in the phrase "being an estate in fee-simple, fee tail or the life of any person," or the word "estate" in the phrase "or an estate in reversion or remainder."   Under either construction the curtesy interest or estate of Anthony Belanger qualifies no other person to vote.   We are of the opinion, however, that this relative clause limits the phrase "or an estate in reversion or remainder."   That conclusion is supported by the position of the relative clause which immediately follows that phrase, and further we are led to that conclusion by an examination of the acts containing similar provisions in force before the adoption of the constitution.   In the act of September, 1762, in which appears the language "or an Estate in Reversion, that qualifies no other Person to be a Freeman," also appears the following provision:   "And be it further Enacted by the Authority aforesaid, That if any Person hath been admitted Free of this Colony, or any town thereof in Right of his Wife's Dower, or by having a Real Estate in Reversion, that qualifies any other Person to vote."   .   .   .   "the admission of all such Persons to be Freemen, is hereby declared utterly null and void."   This

provision plainly indicates that the clause in question when originally used was intended to limit only an estate in reversion. This is shown in the Digests of 1767, 1798, and 1822, and in the act of February, 1836.

(4)    In this proceeding it is admitted that the curtesy interest of Anthony Belanger is of more than one hundred and thirty-four dollars in value. It is therefore not pertinent here to determine the meaning of the term "value" appearing in said constitutional provision when applied to an estate in reversion or remainder. It may be a matter requiring consideration in some proceeding hereafter before us as to how far the determination of the court in *In re The Liquors of Horgan, supra,* as to the signification of that word has been affected by the interpretation which we have placed upon the phrase "real estate", and whether we should follow the conclusion of the court in that case with reference to the meaning of the word "value." This question is not involved here, was not argued before us and we would not be understood inferentially, as having passed upon it. In some adversary proceeding in the future the political rights of a certain class of citizens may appear to require a determination of the matter and we will then consider it after a full hearing of the interested parties.

We are of the opinion that the respondents, sitting as the Board of Canvassers, were acting properly within their jurisdiction in placing the name of Anthony Belanger upon the real estate voting list of the first ward of Woonsocket and that the respondents as a Board of Aldermen, as far as appears from the record before us, acted within their jurisdiction in declaring Anthony Belanger duly elected to the office of alderman from said first ward at the election held on November 2, 1920.

The writ of *certiorari* issued upon the above entitled petition is quashed.

*Eugene L. Jalbert, Raphael L. Daignault,* for petitioner.

*Greene, Kennedy & Greene, Wilson, Churchill & Curtis, Alexander L. Churchill,* for respondents.